120

## H. T. OF WEST PALM BEACH, Inc. v. ARMOUR MANAGEMENT CORPORATION.
### No. 76-2544 A    (L) 01 C.

Circuit Court, Palm Beach County, Civil Appeal.

March 22 and April 7, 1977.

William C. Owen, Jr., West Palm Beach, for the appellant.

H. David Faust, Palm Beach, for the appellee.

VAUGHN J. RUDNICK, Circuit Judge.

*Order, March 22, 1977:* Armour Management Corporation, the appellee, brought eviction proceedings in the county court against H. T. of West Palm Beach, Inc., appellant. The appellant being evicted and dissatisfied with the decision of the lower court brings this appeal.

The appellant was in possession of the property in question pursuant to the terms of a written lease which had been executed in 1965 and provided for a term of fifteen years, together with two consecutive five year renewal terms and an option to purchase. Neither the appellant nor appellee were the original parties to the lease agreement as the appellant acquired its interest in 1970 while the appellee purchased its interest in November of 1975. The demised premises consists of commercial property upon which is

located an established restaurant. The alleged default relates to the non-payment of rent when due, together with the acceleration and cure provisions of the lease, the material parts of which are set forth below —

## ARTICLE III

### BASIC RENT

*Section 1.* Lessee covenants to pay to Lessor during such term *a net basic rental* (over and above the other additional payments to be made by Lessee as hereinafter provided) *of $12,000.00 per year throughout the term of this lease,* including the renewal option terms, hereinabove mentioned. *In addition to the minimum guaranteed annual rental of $12,000.00,* Lessee shall also pay, annually, a sum equal to one percent (1%) of the gross annual income from sales of goods and/or services upon the property in excess of $250,000.00 per calendar year and a sum equal to two percent (2%) of that gross annual income in excess of $300,000.00. The rental period shall commence upon delivery of possession to Lessee (as defined in Article I, Section 4, of this lease). *The minimum, guaranteed annual rental ($12,000.00) shall be paid monthly, in advance in $1,000.00* installments, except that the first of such monthly rent payments shall be due upon signing of this lease, together with a security deposit of $1,000.00. Said deposit shall be held by Lessor until the termination of the lease and then returned to Lessee, provided no defaults then exist. The extra rental due from the percentage of gross income over $250,000.00 per year provision shall be reported and paid within 30 days of the end of each calendar year. The annual gross income report shall be in writing and its correctness attested to by the certification of a Certified Public Accountant. During the renewal periods, the percentage of gross income rental shall be only upon that in excess of $300,000.00, and, at two percent (2%).

*Section 2.* Payment of the *net basic rental* in installments is solely as a convenience to Lessee and in the event of a default in payment thereof Lessor shall have the option to declare all remaining installments then due and payable.

*Section 3.* The minimum, monthly rental ($1,000.00) shall be due on the first day of each month. Should the commencement of rental date, under Section 3 of Article I, occur during a calendar month, the rental shall be prorated for that partial month.

## ARTICLE XVI

### CONDITIONAL LIMITATIONS — DEFAULT PROVISIONS

*Section 3.* If Lessee shall make default in the payment of *the basic rent,* or any part of the same, and such default shall continue for ten days after notice thereof by Lessor, or shall make default in the payment of any item of additional rent or any other charge required to be paid by Lessee hereunder or any part of the same, and such default shall continue for

ten days after notice thereof by Lessor, or if this lease shall terminate as in Section 1 or Section 2 of this Article provided, Lessor may immediately re-enter the demised premises and remove all persons and all or any proprty therefrom, and repossess and enjoy said premises, as of their former estate together with all additions, alterations and improvements. (Italics added.)

The appellant had a history of being late in its lease payments and appellee, upon acquiring its interest in the lease, advised appellant the appellee would insist on rental payments being made on time as specified in the lease agreement. Notwithstanding the warnings given to the appellant, the appellant failed to timely pay the rental installment due December 1, 1975 and demand for payment was immediately made and legal proceedings were instituted but successfully defended by appellant.

The payment due May 1, 1976 forms the basis of this controversy. May 1, 1976 was a Saturday and the offices of appellee were open all day and no rental payment was received. At 6:30 p.m. the appellant telephoned a desk clerk at a motel also owned by appellee and offered to deliver the rent to the clerk, which offer was rejected by the clerk because he had no authority to accept it. The rent was not paid on Sunday, nor early Monday morning and the appellee gave the appellant written notice of the default and advised all the remaining minimum monthly payments payable under the lease agreement were acceleratd. Appellee demanded the payment of $64,562.40 and the appellant did not pay it. The appellant had in its possession a cashier's check in the amount of $1,195.60 which was immediately tendered to the appellee's agent who had delivered the notice of default and demand but the agent refused to accept the cashier's check. Later the same date the appellant delivered the cashier's check to the office of the appellee's attorney. On June 1, 1976 the appellant delivered the June 1st rental installment to Mr. Armour as president of the appellee corporation which was received by him without comment and immediately delivered to his attorney for the purpose of being returned to appellant.

This law suit was instituted on May 18, 1976 and pursuant to the directions of the lower court the checks tendered on May 3 and June 1 were delivered to the clerk of the court at the time of trial and thereafter endorsed for deposit pursuant to the directions of the court.

The issues as framed by the parties are —

(1) Does the written lease agreement give the lessee the right to ten days written notice of default in payment of rent?

(2) Does the lessor's option to accelerate rent upon default in payment of an installment extend only to the balance of the rent due for the lease year?

(3) Did the lessor waive any alleged default in payment of the May 1 rent installment by knowingly accepting the rent installment due on June 1?

The decision of the fact finder and the lower court arrives in this court with a presumption of correctness and the burden is upon the appellant to demonstrate before this court any reversible error committed below.

Addressing Issue No. 3, the trial judge was presented with a question of fact. The evidence presented during the course of the trial is consistent with the finding the receipt of the rental payments after demand and acceleration were made was not an acceptance of rent by the lessor which would act as a waiver of the default, and the appellant has failed to demonstrate reversible error relating to issue No. 3.

The remaining issues are concerned with the written provisions of the lease in question and the interpretation to be given them. It is not the function of any court, while performing its duties relating to the interpretation of written documents, to create ambiguity where none exists, or to avoid ambiguity where it does exist. Article III, Section 2, as quoted above is the acceleration clause in question. As to when the option to accelerate accrues, there exists no ambiguity. It accrues upon the happening of an event; that event being the default in the payment of rent when due.

The appellant urges this court to interpret the provision to read: in the event of a default in the payment (or rent) and such default shall continue for ten days after notice thereof by the lessor, the lessor shall have the option to declare all remaining installments then due and payable. To so interpret the acceleration clause is to rewrite the provision of the lease under consideration and this is not the function of the court. If the parties desired the additional provisions to be included within Section 2 of the lease, they could have easily so provided as they did in Article XVI, Section 3 of the lease. Article III, Section 2 of the lease, as it relates to *when* the option to accelerate accrues, is clear and unambiguous and the appellant has failed to demonstrate to this court the commission of reversible error.

The final issue raises the question as to how much rent the lessor could claim was "then due and payable" upon his exercise of the option to accelerate. The trial court agreed with the position of

the appellee that the proper interpretation to Article III, Section 2 granted the lessor the option to declare all remaining installments under the lease to become due and payable. Granted this interpretation, if upon the execution of this lease the lessee was one day late in its first rental payment, the lessor could demand $178,000 as accelerated rental for the full fifteen year period of the lease. Upon the failure to pay the same within ten days after written notice, the lessor could immediately reenter the demised premises without more.

The paragraphs within the lease relating to the payment of rent use three distinct terms in describing the basic rent "a net basic rental," "the minimum guaranteed annual rental," and "the basic rent." The court, in reading and interpreting this lease, rules the above terminology is synonymous and it is the minimum guaranteed annual rental of $12,000 payable in monthly installments of $1,000 each, in advance.

The installments referred to in the acceleration clause and the default in the payment thereof clearly relates to the $1,000 monthly installment of the minimum guaranteed annual rental of $12,000 and grants the lessor the option to declare all remaining installments "then due and payable."

*Query:* What remaining installments are then due and payable? Is it the balance of all unpaid minimum guaranteed annual rental payments for the remainder of the entire lease, or the balance of all unpaid monthly installments during the minimum guaranteed annual rental period of one year? This provision in the lease is ambiguous.

It is the law of Florida that —

"Courts of equity always mitigate forfeitures, or relieve against them, when this can be done without doing violence to the contracts of the parties. . . . Forfeitures not being favored in equity, will not be enforced if couched in ambiguous language. * * * All provisions of a contract should be considered and construed with reference to controlling provisions and principles of law. . . . And provisions of law applicable to the subject matter of contracts are parts of the contract, whether so expressed or referred to in the contracts or not. . . . Forfeitures not being favored in the law, the provisions upon which they are based must be strictly construed." McCaskill v. Union Rental Stores Co. 52 So. 961 Fla. 1910) ; see also 7 Fla. Jur. - *Contracts,* Section 168, Forfeitures and 20 Fla. Jur. - *Landlord and Tenant,* Section 132, Forfeiture Clauses.

The Florida Supreme Court has also held —

"The requisites of a formal demand at common law are the making of a demand, by landlord or his duly authorized agent, of the exact amount of rent due on the day it is due, at a convenient time before, and continuing actively or constructively until, sunset, at the most notorious place on the demised premises, except where the rent is made payable at some other place, in which case demand must be made there." Baker v. Clifford-Matthew Investment Co., 128 So. 827 (Fla. 1930).

Applying the above upon the exercise of the acceleration clause, there remained six monthly installments due and payable upon the minimum guaranteed annual rental, a sum of $7,173.60 — the parties agree that the minimum guaranteed annual rental at some date subsequent to the original agreement and for reasons which are not important to the case had been changed so that it was being paid in monthly installments of $1,195.60 each, rather than $1,000 each.

The appellee demanded upon the exercise of the acceleration clause $64,562.40. The appellee's demand for the payment of rent due and payable was in gross error and as a result its forfeiture rights were not established and a wrongful holding of the premises by the appellant was not shown. See Baker v. Clifford-Matthew Investment Co. supra.

Based upon the foregoing, the judgment of the lower court is reversed and this cause is remanded for further proceedings in accordance with the views expressed herein.

The clerk of this court is directed to send a certified copy of this order, which copy shall serve as a mandate, to the clerk of the county court of Palm Beach County upon the expiration of fifteen days of the date of this order, unless a petition for rehearing is filed in this cause, in which event the time for complying with this directive shall be extended until the petition is denied, or, if granted, until the cause has been fully determined.

Reversed and remanded.

*Order April 7, 1977:* The appellee, Armour Management Corporation, on March 30, 1977 filed its petition for rehearing relating to this court's opinion filed March 22, 1977 reversing the judgment rendered by the trial court.

The court has considered the matters set forth in the petition for rehearing and the decision of Dobbs v. Petko, 207 So.2d 11 (Fla. 4th DCA 1968), together with the cases cited therein, Will-

126

scott, Inc., v. Ullman, 117 So.2d 856 (Fla. 3rd DCA 1960) and Frank v. Pioneer Metals, Inc., 121 So.2d 685 (Fla. 3rd DCA 1960).

It is upon consideration thereof ordered and adjudged that the petition for rehearing is denied.